**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| 477 WEST 142ND STREET HOUSING, DEVELOPMENT FUND CORP., | Case No. 15-12178 (SHL) |
| | |
| Debtor. | (Confirmed) |

-----------------------------------------------------------------x

AMSTERDAM KEY ASSOCIATES LLC,

        Plaintiff,

    v.

                                        Adv. No. 19-01126 (SHL)

QUEEN MOTHER DR. DELOIS BLAKELY and INI'CHINWA THOMAS,

        Defendants.
-----------------------------------------------------------------x
QUEEN MOTHER DR. DELOIS BLAKELY,

        Plaintiff,

    v.

                                        Adv. No. 20-01004 (SHL)

AMSTERDAM KEY ASSOCIATES LLC,

        Defendants.
-----------------------------------------------------------------x

## <u>MEMORANDUM OF DECISION</u>

**A P P E A R A N C E S :**

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel for Amsterdam Key Associates LLC*
1501 Broadway
22nd Floor
New York, New York 10036
By:    J. Ted Donovan, Esq.

**QUEEN MOTHER DR. DELOIS BLAKELY**
*Pro Se*
477 West 142nd Street
Apartment 2
New York, New York 10031

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the following two motions: (1) Motion to Dismiss filed by

Amsterdam Key Associates LLC in *Queen Mother Dr. Deloris Blakely v. Amsterdam Key*

*Associates LLC* [Adversary Proceeding No. 20-01004, ECF No. 3] (the "Motion to Dismiss"),

and (2) Motion for Summary Judgment filed by Amsterdam Key Associates LLC in *Amsterdam*

*Key Associates LLC v. Queen Mother Dr. Delois Blakely, et al.* [Adversary Proceeding No. 19-

01126, ECF No. 10] (the "Summary Judgment Motion" and, together with the Motion to

Dismiss, the "Motions").

Both Motions involve the same set of facts relating to the underlying Chapter 11

bankruptcy proceeding of 477 West 142nd Street Housing Development Fund Corp. (the

"Debtor"). Queen Mother Dr. Delois Blakely is a former shareholder of the Debtor. She

and her daughter, Ini'Chinwa Thomas, currently reside at 477 West 142nd Street, New

York, NY (the "Property"). It is the Court's understanding from statements made by Dr.

Blakely that Ms. Thomas is disabled, and Dr. Blakely has represented her daughter's

interests throughout the Debtor's bankruptcy proceeding.

The Property was formerly owned by the Debtor. Amsterdam Key Associates LLC

("Amsterdam") is an entity that was formed by the Property's former lienholder to

purchase the Property from the Debtor out of the bankruptcy. For the reasons discussed

below, the Motions filed by Amsterdam are granted.

2

## BACKGROUND

The following facts are derived from the Local Rule 7056-1(b) Stated of Undisputed Facts of Amsterdam Key Associates ¶ 1 [Adversary Proceeding No. 19-01126, ECF No. 10 (the "Amsterdam SMF"), the Declaration of J. Ted Donovan in Support of Summary Judgment [Adversary Proceeding No. 19-01126, ECF No. 10] (the "Donovan Affirmation") and attached exhibits, and the record of proceedings in the lengthy bankruptcy case.

The Debtor was a Housing Development Fund Corporation that acquired the Property in 1982. *See* Amsterdam SMF ¶ 1 (citing Am. Disclosure Statement, dated October 4, 2017, at p. 6 [Case No. 15-12178, ECF No. 139] (the "Amended Disclosure Statement"), attached as Ex. P to the Donovan Affirmation). The Debtor was a Housing Development Fund Corporation, a special type of limited equity housing cooperative in New York City through which the City is able to sell a building directly to tenant or community groups to provide low-income housing. *See* Am. Disclosure Statement, at p. 6. In June 2007, the City of New York obtained a judgment of foreclosure against the Property for non-payment of real estate taxes. *See* Amsterdam SMF ¶ 2 (citing Am. Disclosure Statement, at p. 6). To resolve this tax debt, in September 2007, the Debtor executed a mortgage note in the principal amount of $650,000.00 with a related mortgage and security agreement in favor of Madison Park Investors LLC and E.R. Holdings LLC. *See* Amsterdam SMF ¶ 3 (citing Am. Disclosure Statement, at pp. 6- 7; Mot. to Appoint Trustee, dated February 10, 2016, [Case No. 15-12178, ECF No. 20] (the "Motion to Appoint Trustee")). The mortgage encumbered the Property to secure repayment of the note. *Id.*

The mortgage fell into arrears, and the original lenders commenced a mortgage foreclosure action in February 2009. *See* Amsterdam SMF ¶ 4 (citing NYSCEF legal docket, Index No. 0600313/2009; Mot. to Appoint Trustee). The mortgage was subsequently assigned to 477 W. 142nd Funding LLC ("477 Funding"), which continued with the foreclosure action. *See* Amsterdam SMF ¶ 5 (citing NYSCEF legal docket, Index No. 0600313/2009; Mot. to Appoint Trustee). In June 2015, 477 Funding obtained a judgment of foreclosure and sale. *See* Amsterdam SMF ¶ 6 (citing NYSCEF legal docket, Index No. 0600313/2009; Mot. to Appoint Trustee).

The Property was noticed for a foreclosure sale on August 5, 2015 and the Debtor filed for Chapter 11 on the same day, thereby staying the sale. *See* Amsterdam SMF ¶¶ 7-8 (citing Am. Disclosure Statement, at p. 7). At the time of the bankruptcy filing, the Debtor owed $1,725,044.92 to 477 Funding, including accrued interest and fees and costs, plus on-going interest, fees, taxes, insurance and attorney's fees. *See* Amsterdam SMF ¶ 10 (citing Am. Disclosure Statement, at p. 7; Mot. to Appoint Trustee). The judgment of foreclosure was never reversed, modified or vacated. *See* Amsterdam SMF ¶ 9 (citing NYSCEF legal docket, Index No. 0600313/2009).

After the bankruptcy case was filed, there were extensive and ongoing disputes among the Debtor's shareholders. These included disputes about which tenants were actually shareholders and what tenants were actually paying rent. Numerous hearings were held in this case where little to no progress was made on these shareholder disputes before this Court ultimately appointed Gregory Messer as Chapter 11 Trustee in March 2016 (the "Chapter 11 Trustee"). *See* Amsterdam SMF ¶ 11 (citing Order Approving the

Appointment of the Chapter 11 Trustee, dated March 21, 2016 [Case No. 15-12178, ECF No.37]).  The Chapter 11 Trustee retained a managing agent, an accountant, and an attorney to assist in the fulfillment of his statutory duties as the Chapter 11 Trustee.  *See* Order Approving Employment of R.A. Cohen & Associates as Managing Agent, dated May 24, 2016 [Case No. 15-12178, ECF. No. 50]; Order Approving Employment of Gary R. Lampert as Accountant for Trustee, dated May 16, 2016 [Case No. 15-12178, ECF No. 47]; Order Approving Employment of LaMonica Herbst & Maniscalco as Counsel to the Trustee, dated April 15, 2016 [Case No. 15-12178, ECF No. 41].

After his appointment, the Chapter 11 Trustee entertained potential plans of reorganization that would permit exiting tenants and shareholders to remain at the Property.  But as progress stalled because of the  ongoing infighting between shareholders, the Chapter 11 Trustee eventually moved for authorization to conduct an auction, and that request was preliminarily granted by the Court at a hearing held on July 13, 2017.  *See* Amsterdam SMF ¶¶ 12-13 (citing Trustee's Mot. to Sell Property, dated June 9, 2017 [Case No. 15-12178, ECF No.115]; Am. Disclosure Statement, at p. 9).  The auction was deferred for a time to give 477 Funding, as the holder of the mortgage, an opportunity to confirm a creditor's plan and 477 Funding subsequently filed its Revised Amended Chapter 11 Plan of Reorganization, dated June 30, 2017 (the "Revised Plan").  *See* Amsterdam SMF ¶¶ 14-15 (citing Am. Disclosure Statement, at p. 9; Revised Plan, attached as Ex. E to Donovan Affirmation).

Initially, all five of the then-current shareholder/tenants (including Dr. Blakely) signed a consent to the Revised Plan on or about June 30, 2017.  *See* Amsterdam SMF ¶

16 (citing Revised Plan).  The Revised Plan was further amended on August 18, 2017

[Case No. 15-12178, ECF No. 133] (the "Final Plan").  *See* Amsterdam SMF ¶ 17 (citing

Final Plan, attached as Ex. F to Donovan Affirmation).  Among the revisions contained in

the Final Plan were provisions giving the shareholder/tenants the opportunity to receive

lifetime leases to remain at the Property at a fixed discounted rent and the waiver of all

rent arrears, in consideration for their consent to the Revised Plan.  *See* Amsterdam SMF ¶

18 (citing Final Plan at § 4.4, p. 12).[1]  Specifically, the Final Plan provides for 477

Funding to grant a "Life Occupancy Lease" to each consenting shareholder/tenant, defined

in Section 2.26 of the Final Plan as follows:

> "Life Occupancy Lease" means a non-assignable leasehold estate, whereby
> the current tenant or occupant of a residential apartment at the Property
> (Queen Mother Dr. Delois Blakely and her daughter, Ini'Chinwa Thomas;
> Shirley Pitts; Margaret Callender; Charles DeBerry; and JoAnn McClain)
> (collectively, the "Current Tenant" or "Shareholder") is entitled to exclusive
> use and possession of the leased premises (apartment) during the life of that
> Current Tenant at a fixed rent of $400.00 per month. The Life Occupancy
> Lease shall not be subject to any yearly increases as may otherwise be fixed
> by the New York City Rent Guidelines Board for leases for apartments and
> lofts located in New York City.
>
> The term of the Life Occupancy Lease shall expire only upon the occurrence
> of one of the following events: (i) voluntary vacatur of the apartment by a
> Current Tenant; (ii) the death of a Current Tenant; (iii) disability of a
> Current Tenant requiring the Current Tenant to vacate the apartment on a
> permanent basis; or (iv) default by a Current Tenant in timely paying rent of
> $400 per month following confirmation of the Plan.

*See* Amsterdam SMF ¶ 20 (citing Final Plan at § 22.6, p.6).  But the Final Plan does

---

[1]    These provisions were consistent with the Property's history of being part of New York City programs to
provide middle and low income housing.  With these provisions as part of the Final Plan, the City of New York
supported the Final Plan.  *See* Hr'g Tr. 41:2-42:1 (Nov. 9, 2017) [Case No. 15-12178, ECF No. 157] (counsel to the
City of New York noting that "given the sums of money that are owed to [477 Funding], to the trustee, to the city,
and various other parties it just didn't seem that there's any other way that this case could be confirmed, and that at
least this is preserving the affordable housing aspect of it at least for the lives of the current tenants.").

not give these rights to shareholders without conditions.  Rather the Final Plan

provides as follows:

> The Current Tenant pursuant to the Life Occupancy Lease shall not be
> entitled to any additional rights applicable to tenants generally under New
> York City & New York State law or regulations as preoccupying tenants.
> The Life Occupancy  Lease shall not be subject to any Rent Stabilization or
> Rent Control Laws under the State of New York and thus shall not be
> transferable under those statutes and no other person other than the named
> tenant except as to Ini'Chinwa Thomas under the Life Occupancy Lease
> shall have any right to the leased premises.
>
> In consideration for the rights and privileges granted to each Current Tenant
> under the Life Occupancy Lease pursuant to this Chapter 11 Plan, such Current
> Tenant agrees that the Life Occupancy Lease granted under this Plan shall  not
> be  assignable, and the Current Tenant shall not have, and waives (a) any  right
> to transfer his or her respective rights in and to the Life Occupancy Lease in
> any manner, including pursuant to Section 365 of the Bankruptcy Code
> upon a subsequent bankruptcy filing by the Current Tenant, or by bequest or
> otherwise upon death, except that Ini'Chinwa Thomas, the daughter of
> Queen Mother Dr. Delois Blakely, shall be entitled to remain as a Current
> Tenant at $400.00 per month for the duration of her life, subject to the Plan,
> assuming she survives her mother; and (b) any and all claims against the
> Debtor's estate.

*See* Amsterdam SMF ¶ 20 (citing Final Plan).

The Final Plan also included provisions clarifying that an objection to confirmation

by any of the tenants would result in a loss of the right to obtain a Life Occupancy Lease,

as specifically provided in Section 5.5:

> To the extent that the Shareholders do not renege on their prior consents,
> then no additional litigation is contemplated. However, the situation will
> change if any Shareholders renege, in which event a reneging Shareholder
> shall forfeit its Life Occupancy Lease and shall remain liable for all unpaid
> rent obligations.

*See* Amsterdam SMF ¶ 21 (citing Final Plan).

Under the terms of the Final Plan, title to the Property was to be sold and

transferred under a private sale to an entity designated by 477 Funding to take title

7

(commonly known as "Newco"), in consideration of 477 Funding's agreement to pay all

allowed claims in full. *See* Amsterdam SMF ¶ 19 (citing Final Plan). Specifically,

Section 1.1 of the Final Plan provided:

> This Plan is predicated upon a sale and transfer of the Debtor's real property
> located at 477 West 142nd Street, New York, NY (the "Property") to 477
> Funding's designee ("Newco") without an auction process. The sale shall be free
> and clear of all claims, liens, taxes and encumbrances (except for the mortgage
> debt which shall be assumed by Newco). In consideration for the sale and
> transfer of the Property, Newco will pay all allowed claims and capital gains taxes
> in bankruptcy, including allowed Administrative Expenses; claims of New York
> City for allowed and outstanding real estate taxes, water bills, ECB violations and
> HPD judgments; and any allowed unsecured claims. These claims are projected
> to aggregate approximately $2.8 million, or less, depending on the outcome of
> objections.

At a hearing held on September 28, 2017, the Court approved the Amended

Disclosure Statement filed in support of the Final Plan. *See* Amsterdam SMF ¶ 22 (citing

Hr'g Tr., September 28, 2017 [Case No. 15-12178, ECF No. 163], attached as Ex. G to

Donovan Affirmation). Dr. Blakely appeared at the hearing in person, along with her then

counsel, and during the hearing did not indicate any opposition to the terms of the Final

Plan. *See* Amsterdam SMF ¶¶ 23-24, (citing Hr'g Tr., September 28, 2017). During the

hearing, the Court noted that all the shareholders/tenants had previously consented to the

Final Plan, and then stated:

> All right, anybody else who wishes to be heard on the question for whether
> the disclosure statements should be approved? Going once, going twice, all
> right. So, I am happy to approve the disclosure statement in this case.

*See* Amsterdam SMF ¶ 25 (citing Hr'g Tr., September 28, 2017).

Despite her prior written consent to the Final Plan, and failure to object or oppose

approval of the Disclosure Statement, Dr. Blakely subsequently filed an objection to

confirmation of the Final Plan on November 1, 2017, in which she raised allegations of

fraud and self-dealing involving the Trustee and Newco, and asked for the Court to set aside the state court judgment of foreclosure. *See* Amsterdam SMF ¶ 27 (citing Notice of Omnibus Aff. of Rejection by Shareholders to Am. Disclosure Statement & Am. Plan of Reorganization, dated November 1, 2017 [Case No. 15-12178, ECF No.150]). At the confirmation hearing on November 9, 2017, Dr. Blakely was given one last opportunity to withdraw her objections and reaffirm her prior consent so as to maintain a life occupancy lease, but Dr. Blakely chose not to do so. *See* Amsterdam SMF ¶¶ 28-29 (citing Hr'g Tr., Nov. 9, 2017 [Case. No. 15-12178, ECF No. 157]). A similar opportunity was given to Joann McClain, a shareholder/tenant who also initially withdrew her prior consent, but then reaffirmed her consent to the Final Plan at the confirmation hearing, and received her lifetime occupancy lease, leaving Dr. Blakely as the sole dissenter. *See* Amsterdam SMF ¶ 31, 29 (citing Hr'g Tr., Nov. 9, 2017).

After hearing argument, the Court overruled all of Dr. Blakely's objection to confirmation. *See* Amsterdam SMF ¶ 30, 29 (citing Hr'g Tr., Nov. 9, 2017). The Final Plan was confirmed by this Court's Findings of Fact, Conclusions of Law and Order, dated December 4, 2017 [Case No. 15-12178, ECF No.156] (the "Confirmation Order"). *See* Amsterdam SMF ¶ 32 (citing Confirmation Order, attached as Ex. H to Donovan Affirmation).

In Paragraph "N" of the Confirmation Order, the Court made the following finding of fact:

> The Plan Funder has filed a Certification of Ballots (ECF No.153) demonstrating that the Plan has been accepted by the Class 2 Claim of 477 Funding as the only impaired class of creditors entitled to vote on the Plan; and the majority of the Shareholders by a final vote of 4 to 1, with Queen

> Mother Blakely now dissenting and no longer deemed an Accepting
> Shareholder entitled to a Life Occupancy Lease for herself or her daughter,
> Ini'Chinwa Thomas.

*See* Amsterdam SMF ¶ 33 (citing Confirmation Order).

> The fifth decretal paragraph of the Confirmation Order specifically provided:

> ORDERED, good and insurable title to the Property shall vest in the
> Purchaser upon the payment of the consideration required under the Plan,
> free and clear of all claims, liens, taxes, encumbrances or other obligations
> or rights whatsoever, and subject to any and all claims not paid in
> accordance with the Plan, including without limitation, any allowed claim of
> NFF, except as otherwise specifically provided in the Plan or in this Order
> relating to the transfer of the Property being subject to the mortgage held by
> the Plan Funder, which mortgage shall survive confirmation of the Plan;
> provided however, that the Accepting Shareholders, *i.e.,* McClain, Shirley
> Pitts, Margaret Callender and Charles DeBerry, shall receive Lifetime
> Occupancy Leases as set forth in the Plan, and provided further, that Queen
> Mother Blakely and her daughter, Ini'Chinwa Thomas, shall no longer be
> entitled to a Life Occupancy Lease and the Purchaser is authorized to
> exercise all rights and remedies to recover possession of Apartment Nos. 2
> and 5, and to collect any and all unpaid rent claims; . . . .

*See* Amsterdam SMF ¶ 34 (citing Confirmation Order).

Dr. Blakely did not file an appeal from the Confirmation Order and the sale of the

Property closed on February 1, 2018.  *See* Amsterdam SMF ¶¶35-36 (citing generally ECF

Docket in Case No. 15-12178).  Despite this, on May 11, 2018, Dr. Blakely filed a motion

with this Court seeking to "reject" the actions of the Chapter 11 Trustee in supporting the

confirmation of the Final Plan and selling the Property [Case No. 15-12178, ECF No. 177]

(the "Rejection Motion").  *See* Amsterdam SMF ¶ 37 (citing Rejection Mot.).  The

Rejection Motion was denied in its entirety by order of this Court and Dr. Blakely

appealed the Court's decision to the District Court.  *See* Amsterdam SMF ¶¶ 38-39 (citing

Order Den. Mot. of Queen Mother Dr. Delois Blakely, dated June 11, 2018 [Case No. 15-

12178, ECF. No. 186], attached as Ex. I to Donovan Affirmation; Notice of Appeal [Case No. 15-12178, ECF No. 193]).

The District Court affirmed the Bankruptcy Court pursuant to written decision dated November 6, 2018, which held that the Rejection Motion was an impermissible collateral attack on the Confirmation Order, and the appeal was moot by reason of the prior closing of the sale. *See* Amsterdam SMF ¶¶ 40-41 (citing Mem. Op. and Order of United States District Court, dated November 6, 2018 [Case No. 15-12178, ECF No. 207], attached as Ex. J to Donovan Affirmation).

Dr. Blakely subsequently filed an appeal to the Second Circuit Court of Appeals and moved to proceed in forma pauperis and for appointment of counsel. *See* Amsterdam SMF ¶¶ 42-43 (citing order of Second Circuit Court of Appeals, dated May 22, 2019, attached as Ex. K to Donovan Affirmation). The motion was denied, and the appeal was dismissed sua sponte by the Second Circuit by order dated May 22, 2019 on the grounds that the appeal "lacks an arguable basis either in law or in fact." *See* Amsterdam SMF ¶ 44 (citing order of Second Circuit Court of Appeals, dated May 22, 2019). A motion to reargue was denied by the Court of Appeals by Order dated October 9, 2019. *See* Amsterdam SMF ¶ 45 (citing order of the Second Circuit Court of Appeals, dated October 9, 2019, attached as Ex. L to Donovan Affirmation).

By objecting to the Final Plan, Dr. Blakely lost both her occupancy rights to the Property as well as the benefit of the rent waiver given to accepting shareholders under Section 4.4 of the Final Plan. *See* Amsterdam SMF ¶ 46 (citing Final Plan). The rent roll maintained by the Debtor and turned over to the Chapter 11 Trustee indicated that Dr.

Blakely owed the Debtor unpaid rent at $1,200 per month dating back over ten years, for a total amount due and owing of $148,000 as of April 2016, exclusive of interest. *See* Amsterdam SMF ¶ 47 (citing copy of Debtor's rent roll, as turned over to the Trustee and from the Trustee to Amsterdam, attached as Ex. M to Donovan Affirmation). Additionally, the Chapter 11 Trustee's records show that no rent was received from Dr. Blakely during the period that the Trustee managed the Property, from May 2016 to March 1, 2018. *See* Amsterdam SMF ¶ 48 (citing copy of Trustee's rent roll relating to Dr. Blakely, together with copies of monthly invoices, attached as Ex. N to Donovan Affirmation). The Trustee's rent roll shows a decrease in the monthly rent from $1,200 per month to $400 per month. *See id.* Amsterdam notes that in light of the $400 per month rent being proposed in the Life Occupancy Leases, starting in February 2017, the Chapter 11 Trustee accepted $400 per month rent from each tenant. Amsterdam asserts, however, that the Trustee reserved all rights to seek the entire $1,200 due under the lease and that Dr. Blakely's actual rent for the entire Trustee period is properly calculated at $1,200 per month, or $27,600, not the $16,400 reflected on the Trustee's rent roll. *See* Copy of Trustee's rent roll relating to Dr. Blakely, together with copies of monthly invoices, attached as Ex. N to Donovan Affirmation.

Nor has Dr. Blakely paid any use and occupancy to Plaintiff following the closing. *See* Amsterdam SMF ¶ 49 (citing copy of Amsterdam's chart of unpaid rent relating to Dr. Blakely, attached as Ex. O to Donovan Affirmation). Amsterdam alleges that Dr. Blakely owes total arears in the amount of at least $197,200 through October 2019, plus interest.

*See* Amsterdam SMF ¶ 50 (citing copy of Amsterdam's chart of unpaid rent relating to Dr. Blakely).

On May 1, 2019, Amsterdam filed the above-referenced adversary proceeding against Dr. Blakely and Ini'Chinwa Thomas, which sought a declaratory judgment that: (i) Dr. Blakely and Ms. Thomas' occupancy, possessory and/or leasehold rights had been terminated and that they had no continuing legal right or entitlement to remain at the Property as a tenant, shareholder or otherwise; (ii) that Dr. Blakely's status as a dissenting shareholder of the Debtor had not conferred any current or subsisting rights to remain in possession of Unit No. 2 at the Property; (iii) that the Chapter 11 Trustee sold the Property to Amsterdam free and clear of Dr. Blakely's interests as a shareholder and tenant pursuant to Section 363(f) of the Bankruptcy Code; and (iv) that Dr. Blakely and Ms. Thomas' occupancy, legal or possessory rights and interest had terminated as a result of the sale of the Property. *See* Compl. ¶ 29 [Adversary Proceeding No. 19-01126, ECF No. 1]. Additionally, the Complaint sought a monetary judgment against Dr. Blakely for all unpaid rent currently due and owing, together with continuing use and occupancy, interest and costs of the action. *See id.* ¶ 32. On November 20, 2019, Amsterdam filed the Summary Judgment Motion and subsequently served a copy on Dr. Blakely and Ms. Thomas. *See* Adversary Proceeding No. 19-01126, ECF Nos. 10, 12. The Court extended the briefing schedule on several occasions. *See* Adversary Proceeding No. 19-01126, ECF Nos. 13, 15. Ms. Blakely filed an opposition to the Summary Judgment Motion, dated December 21, 2019, which asserted counterclaims and asked the Court to, among other things, "void nunc pro tunc and [sic] all bargains and engagements between Trustee,

Gregory Messer, Esq and Amsterdam Key Associates LLC, including, but not limited to the new deed, mortgage, & assignment of leases, in preservation of the Constitutional rights of Queen Mother Dr. Delois Blakely and her handicapped daughter Ini Chinwa Thomas."  Reply Aff. In Opp. to Summ. J. Due 10/23/19, as Ordered by the Court with Countercls. at 4-5 [Adversary Proceeding No. 19-01126, ECF No. 16].  Dr. Blakely also asserted "counter claim monetary damages of $4,000,000 . . . as insufficient compensatory remedy for their irreparable damages" and "nunc pro tunc continuing objections to [sic] amended disclosure statement & amended plan of reorganization proposed by 477 W. 142nd Funding LLC." *Id.* at 5.  She asked that the Amended Disclosure Statement and the Final Plan be declared void. *See id.* at 7.  Amsterdam subsequently filed a reply on January 20, 2020. *See* Adversary Proceeding No. 19-01126, ECF No 17.

On January 10, 2020, Dr. Blakely filed the above-referenced adversary proceeding against Amsterdam on a pro se basis, which sought to quiet title and made a request "for recoupment against an unconscionable destruction of the value of her original shares in 477 West 142nd Street H.D.F.C., through a capricious conveyance of title to defendants Amsterdam Key Associates LLC, an act which patently clouded title to the property in this complaint. . . ."  Compl. at 1-2 [Adversary Proceeding No.  20-01004, ECF No. 1]. Dr. Blakely's complaint made similar allegations to the reply she had filed in the action brought against her by Amsterdam.  Dr. Blakely demanded that the deed of conveyance to Amsterdam be voided, asserting, among other things, that the liens were fabricated and alleging bad faith on the part of the Chapter 11 Trustee. *See id.* at 1, 3-4.  Dr. Blakely asserted a claim for "recoupment of monetary damages of $4,000.000" and requested that

the Amended Disclosure Statement and the Final Plan be "rejected for failure to comply

the [sic] thirteen requirements found in 11 U.S.C. 1129(a)(1)-(13)." *Id.* at 4.  Dr. Blakely

again raised the issue of "Newco" that was previously addressed by this Court on several

occasions.  *See id.* at 5.  Amsterdam filed the Motion to Dismiss on February 7, 2020 and

Dr. Blakely filed a response and notice of pendency on March 4, 2020.  *See* Adversary

Proceeding No. 20-01004, ECF Nos. 3, 5.

This Court held a status conference on March 5, 2020 regarding the Summary

Judgement Motion and the Motion to Dismiss.  *See*  Notice of Hearing [Adversary

Proceeding No. 20-01004, ECF No. 4].  The status conference was attended by both Dr.

Blakely and counsel to Amsterdam.  At that conference, the Court set the hearing on the

Summary Judgment Motion and the Motion to Dismiss for April 23, 2020 at 10 a.m.

Despite Dr. Blakely's continuing and extensive involvement in these proceedings over the

past four years, Dr. Blakely failed to contact the Court or to attend the hearing

telephonically on April 23, 2020.[2]  At that hearing, counsel to Amsterdam rested on the

papers and the Court took the matters under advisement.

## DISCUSSION

## 1. AMSTERDAM'S SUMMARY JUDGMENT MOTION

Federal Rule of Civil Procedure 56, made applicable to this case under Federal Rule of

Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56.  Summary judgment is appropriate "if the

---

[2]        The procedures for attending hearings telephonically were posted on the Court's website.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant]

is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden is on the moving party to demonstrate that there is no genuine issue of material fact.

*See Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1996). The burden then shifts to

the non-moving party to produce "sufficient specific facts to establish that there is a genuine

issue of material fact for trial." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (citation

omitted). However, "the mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Properly supported facts contained in a

statement of material facts that are not specifically controverted by an opposing party are deemed

to be admitted. *See* S.D.N.Y. Local Bankruptcy Rule 7056-1(d) ("Each numbered paragraph in

the statement of material facts required to be served by the moving party shall be deemed

admitted for purposes of the motion unless specifically controverted by a correspondingly

numbered paragraph in the statement required to be served by the opposing party.").

Furthermore, the Court may take judicial notice of proceedings in the underlying bankruptcy

case for purposes of its decision in this adversary proceeding. *See In re E.R. Fegert, Inc.*, 887

F.2d 955, 957-58 (9th Cir. 1989) ("Whether these facts were supported by the record in this

adversary proceeding is unclear; however, all of the facts are supported by the record of the

underlying bankruptcy matter. . . . 'The record in an adversary proceeding in bankruptcy

presumes and in large measure relies upon the file in the underlying case. . . .'") (quoting *Berge

v. Sweet (In re Berge)*, 37 B.R. 705, 708 (W.D. Wis. 1983)); *Messer v. Wei Chu (In re Gao)*, 560

B.R. 50, 55 & n.4 (Bankr. E.D.N.Y. 2016) (taking judicial notice of relevant documents filed in

debtor's bankruptcy case and related adversary proceedings for purposes of decision on summary judgment) (citing cases).  In sum, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1969)).

A.  Termination of Dr. Blakely and Ms. Thomas's Possessory and/or Leasehold Rights

The first count of Amsterdam's complaint seeks a declaratory judgment that (i) Dr. Blakely and Ms. Thomas's occupancy, possessory and/or leasehold rights have been terminated and Dr. Blakely and Ms. Thomas have no continuing legal right or entitlement to remain at the Property either as a tenant, shareholder or otherwise; (ii) Dr. Blakely's status as a dissenting shareholder of the Debtor does not confer any current or subsisting rights to remain in possession of the Apartment; (iii) the Chapter 11 Trustee sold the Property to the purchaser free and clear of Dr. Blakely's interests as a shareholder and tenant pursuant to Section 363(f) of the Bankruptcy Code; and (iv) Dr. Blakely and Ms. Thomas's occupancy, legal or possessory rights and interests have terminated as a result of the sale of the Property.  *See* Compl. [Adv. P. No.  19-01126, ECF. No. 1].  The Court grants this first count of Amsterdam's Summary Judgment Motion, as Dr. Blakely and Ms. Thomas's rights with respect to the Property have been terminated.

To begin with, the Court cannot and will not entertain any issues relating to the prepetition validity of the mortgage, as a judgment of foreclosure was entered by the New York State court and was never reversed, modified, or vacated.  The Property was noticed for a foreclosure sale on the day that the Debtor filed for Chapter 11.  By the time of the filing, the Debtor owed $1,725,044.92 to 477 Funding, plus on-going interest, fees, taxes,

insurance and attorney's fees.  Under principles of res judicata and the *Rooker-Feldman*

doctrine, the foreclosure judgment was given preclusive effect by this Court in the

bankruptcy proceeding and those doctrines preclude any new or additional challenges to

the validity of the mortgage documents or the Debtor's mortgage debt.  "*Rooker-Feldman*

bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review of those judgments.'"  *Sykes v. Mel*

*S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015); *see also Castaldo v. Bank of New*

*York (In re Castaldo)*, 313 F. App'x 351, 352 (2d Cir. 2008) (stating that Rooker-Feldman

doctrine "clearly applies to this case where the debtor-appellant challenges a Judgment of

Foreclosure and Sale obtained by the creditor-appellee from [the] New York State

Court.").

Additionally, any rights that Dr. Blakely and her daughter may have had with

respect to the Property during the bankruptcy proceeding have been fully and finally

resolved through the Final Plan and this Court's Confirmation Order.  It is undisputed that

Dr. Blakely dissented from the Final Plan, which clearly provided that only accepting

shareholders were entitled to Life Occupancy Leases.  Section 5.5 of the Final Plan stated

that:

> To the extent that the Shareholders do not renege on their prior consents,
> then no additional litigation is contemplated. However, the situation will
> change if any Shareholders renege, in which event a reneging Shareholder
> shall forfeit its Life Occupancy Lease and shall remain liable for all unpaid
> rent obligations.

*See* Final Plan.  The Confirmation Order included a finding of fact that:

The Plan Funder has filed a Certification of Ballots (ECF No.153) demonstrating that the Plan has been accepted by the Class 2 Claim of 477 Funding as the only impaired class of creditors entitled to vote on the Plan; and the majority of the Shareholders by a final vote of 4 to 1, *with Queen Mother Blakely now dissenting and no longer deemed an Accepting Shareholder entitled to a Life Occupancy Lease for herself or her daughter, Ini'Chinwa Thomas*.

*See* Paragraph N of Confirmation Order (emphasis added).  The Confirmation Order also provided that:

Queen Mother Blakely and her daughter, lni'Chinwa Thomas, shall no longer be entitled to a Life Occupancy Lease and the Purchaser is authorized to exercise all rights and remedies to recover possession of Apartment Nos. 2 and 5.

*See* Fifth Decretal Paragraph of Confirmation Order.

Thus, the Final Plan clearly calls for forfeiture and termination of the rights of Dr. Blakely and Ms. Thomas, and they are bound by its terms.  This is because the Final Plan serves as a binding contract between the Debtor, its creditors and its equity holders.  *See, e.g., CGO lnvs., LLC v. AB Liquidating C01p. (In re AB Liquidating Corp.)*, 2006 WL 6810956, at *3 (9th Cir. BAP Dec. 22, 2006) (concluding "[g]enerally a chapter 11 plan should be interpreted as a contract.").  Indeed, the Final Plan is binding on all parties, whether or not they voted to consent to its terms.  Section 1141(a) of the Bankruptcy Code provides, in relevant part:

the provisions of a confirmed plan bind ... any creditor, equity security holder or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

"Thus, a confirmed  plan binds, among others, the debtor and its creditors to its terms and vests all property of the debtor's estate in the reorganized debtor unless otherwise provided

in the plan, and, moreover, can vest the property that is dealt with by the plan free and clear of all claims and interests of creditors and interest holders even if it was not necessarily property of the estate pre-confirmation." *Lawski v. Frontier Ins. Grp., LLC (In re Frontier Ins. Grp., Inc.),* 585 B.R. 685, 694 (Bankr. S.D.N.Y. 2018); *see also Baeshen v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c)),* 520 B.R. 15, 21 (Bankr. S.D.N.Y. 2014) ("Under Section 1141 of the Bankruptcy Code, a confirmation plan bind[s] its debtors and creditors as to *all* the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action.").

The Confirmation Order entered in this case itself provides:

> ORDERED, that this Confirmation Order, the Plan, and all related agreements and documents necessary to implement the Plan, shall be binding upon all heirs, successors and assigns of the Debtor and the Debtor's Shareholders; ....

*See* Seventh Decretal Paragraph of Confirmation Order. Thus, even though Dr. Blakely withdrew her prior consent and rejected the Final Plan, she is still bound by its terms due to its finality resulting from the Confirmation Order.

Furthermore, "the doctrine of res judicata applies to orders confirming chapter 11 plans. 'The confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of a final judgment in an ordinary civil litigation.' Thus, in addition to the preclusive effects of section 1141 of the Bankruptcy Code, 'the confirmation order serves as res judicata as to any issues that were or could have been raised in the confirmation proceedings.' Res judicata has specifically been applied to preclude post-confirmation assertion of contrary ownership interests by third parties who participated in the case." *In re Frontier Ins.,* 585 B.R.

685, 694 (Bankr. S.D.N.Y. 2018) (quoting *Silverman v. Tracar, S.A. (In re Am. Preferred Prescription, Inc.),* 255 F.3d 87, 92 (2d Cir. 2001)).

Dr. Blakely never appealed the Confirmation Order and her appeals from this Court's order denying her Rejection Motion challenging the Final Plan, have been fully exhausted through denials from both the District Court and the Second Circuit Court of Appeals.  Dr. Blakely was provided with prior notice of the confirmation process and she attended both the hearing on approval of the Amended Disclosure Statement (with her then-counsel) and the hearing on confirmation of the Final Plan.  She actively participated in the bankruptcy case by attending numerous hearings.  For a time, she was represented by counsel.  She attended all the hearings on the Amended Disclosure Statement and on confirmation of the Final Plan.  She withdrew her consent to the Final Plan with full knowledge of the consequences, having repeatedly been advised by the Chapter 11 Trustee and this Court of the results of her decision.  Thus, the Final Plan and Confirmation Order are fully binding under her.  As a result of the confirmation of the Final Plan, Dr. Blakely and her daughter no longer retain any residual occupancy, possessory or leasehold rights as either a shareholder or a tenant.

The defenses and counterclaims asserted by Dr. Blakely raise allegations relating to malfeasance on the part of the Chapter 11 Trustee and the Newco entity that was formed to take the Property through the sale.  These are the same challenges to the sale process that have already been litigated and overruled by the Court at both the Confirmation Hearing and in this Court's decision on Dr. Blakely's attempt to challenge the Final Plan post-confirmation through the Rejection Motion.  *See* Hr'g Tr., dated Nov.

9, 2017); Confirmation Order, dated December 4, 2017; Order Den. Mot. of Queen

Mother Dr. Delois Blakely, dated June 11, 2018.  Dr. Blakely appealed this Court's

decision denying the Rejection Motion to both the District Court and Second Circuit Court

of Appeals, which appeals were denied.   *See* Mem. Op. and Order of United States

District Court, dated November 6, 2018; Order of Second Circuit Court of Appeals, dated

May 22, 2019; Order of the Second Circuit Court of Appeals, dated October 9, 2019.  The

allegations raised by Dr. Blakely have been fully and finally litigated, and she is not

permitted to relitigate these issues yet again.

   B.  Unpaid Rent and Use and Occupancy

The second count of Amsterdam's complaint seeks a judgment awarding unpaid rent and

use and occupancy from Dr. Blakely.  The Final Plan provides a rent waiver to the Debtors'

shareholders, but Amsterdam argues that as a result of Dr. Blakely's reneging on consent to the

Final Plan, she lost the protections of that rent waiver.

The Final Plan does provide that shareholders are entitled to a waiver of unpaid rent:

> [I]n addition to receiving a Life Occupancy Lease, all Shareholders will obtain the
> additional benefit that the Debtor's claims against them for unpaid rent shall
> likewise be deemed waived and released by the Debtor's bankruptcy estate. These
> claims are significant, since rent has not been paid for many years, and potentially
> exceed $437,400.

Final Plan at § 4.4.

But Amsterdam is correct that the Final Plan provides that reneging on consent to

confirmation would result in a loss of the right to the rent waiver:

> To the extent that the Shareholders do not renege on their prior consents,
> then no additional litigation is contemplated. However, the situation will
> change if any Shareholders renege, in which event a reneging Shareholder
> shall forfeit its Life Occupancy Lease and shall remain liable for all unpaid
> rent obligations.

Final Plan at § 5.5.  By reneging on her consent and opposing the Final Plan, Dr. Blakely

triggered the cancellation of the rent waiver and Dr. Blakely is clearly obligated to pay unpaid

rent.

Amsterdam argues that it is entitled to a judgment of $197,200 through October 31,

2019, plus all accrued interest on this amount.  This amount includes Dr. Blakely's unpaid rent

to (i) the Debtor prior to and subsequent to the filing of the bankruptcy, (ii) the Operating

Trustee after his appointment, and (iii) Amsterdam itself for amounts owed subsequent to the

sale of the Property.

Dr. Blakely has not presented any evidence that she has paid any of the rent she owes

for occupancy before the bankruptcy, during the bankruptcy or after the sale of the Property.

Accordingly, the Court awards to Amsterdam the unpaid rent owed by Dr. Blakely for use and

occupancy after the sale of the Property.

As for the amounts owed before the sale, the undisputed facts establish  that these

amounts are due and owing by Dr. Blakely.  But it is unclear to the Court whether Amsterdam

has the right to directly recover these funds or whether the funds are to be recovered by the

Chapter 11 Trustee or the Disbursing Agent under the Final Plan and then remitted to

Amsterdam.  Section 5.5 of the Final Plan provides:

> Any Causes of Action belonging to the Debtor against third parties shall remain
> property of the Debtor's estate and shall be vested in the Disbursing Agent
> following Confirmation of the Plan for prosecution as the Disbursing Agent
> deems necessary and appropriate.  To the extent that the Disbursing Agent
> recovers any monies on account of the Causes of Action, the net proceeds
> remaining after payment of fees and expenses, including reasonable legal fees,
> shall be paid to 477 Funding on account of its Class 2 Claim.  To the extent that
> the Shareholders do not renege on their prior consents, then no additional
> litigation is contemplated.  However, the situation will change if any Shareholders

renege, in which event a reneging Shareholder shall forfeit its Life Occupancy
Lease and shall remain liable for all unpaid rent obligations.

Final Plan at § 5.5.

In fact, the Disbursing Agent here is the Chapter 11 Trustee.  *See* Final Plan at § 2.19.

Amsterdam and the Chapter 11 Trustee shall confer and submit a letter brief within 21 days as to

the appropriate way to proceed as to rents owed by Dr. Blakely before the sale.

2.  **AMSTERDAM'S MOTION TO DISMISS**

Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012,

provides that a complaint must be dismissed if it fails to state a claim upon which relief can be

granted.  In analyzing a motion to dismiss under Rule 12(b)(6), a court looks to whether a

plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court must determine "whether the

well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to

relief." *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556

U.S. 662, 679 (2009)).  A court must proceed "on the assumption that all the allegations in the

complaint are true." *Twombly*, 550 U.S. at 555.  The court must also draw all reasonable

inferences in favor of the non-moving party. *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161

(2d Cir. 2000).

For all the same reasons discussed above, the Court grants Amsterdam's motion to

dismiss in the adversary proceeding brought by Dr. Blakely.  Dr. Blakely sought to quiet

title and requesting equitable recoupment with respect to the transfer of the Property from

the Debtor to Amsterdam, but again bases her arguments on the same issues that were

previously raised and litigated by this Court, the District Court and the Second Circuit

Court of Appeals.  Indeed, Dr. Blakely's Rejection Motion that was previously rejected by

this Court and the Complaint filed by her against Amsterdam are substantially similar.

*Compare* Rejection Mot. [Case No. 15-12178, ECF No. 177], *with* Compl. [Adversary

Proceeding No. 20-01004, ECF No. 1].

Claims dismissed in a prior court decision are barred by the law of the case doctrine,

which provides that "[w]hen a court decides upon a rule of law, that decision should continue to

govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S.

605, 618 (1983); *see also De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).  "Law of the

case rules have developed to maintain consistency and avoid reconsideration of matters once

decided during the course of a single continuing lawsuit.  These rules do not involve

preclusion by final judgment; instead, they regulate judicial affairs before final judgment." *In re

PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991).  "Courts apply the law of the case doctrine when

their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved

it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).  The

doctrine "operates to create efficiency, finality, and obedience within the judicial

system." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1363 (S.D. Fla. 2005).

For the purposes of the doctrine, this adversary proceeding is part of the same "case" as this

Court's ruling on the Rejection Motion.  *See Moise v. Ocwen Loan Servicing LLC (In re Moise)*,

575 B.R. 191, 2017 WL 3126851, at *9 (Bankr. E.D.N.Y. 2017) (holding under the law of the

case doctrine, separate contested events or adversary proceedings tied to a single main

bankruptcy case are all part of the same case); *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir.

1990) ("Adversary proceedings in bankruptcy are not distinct pieces of litigation; they are

components of a single bankruptcy case," for purposes of the law of the case doctrine.); *Artra*

*Grp., Inc. v. Salomon Bros. Holding Co.*, 1996 U.S. Dist. LEXIS 16380, 1996 WL 637595 at *5

(N.D. Ill. Oct. 31, 1996) (holding law of the case doctrine covers litigation in main case

and adversary proceeding).

For this reason, the Court grants Amsterdam's Motion to Dismiss and dismisses

the adversary proceeding brought by Dr. Blakely.[3]

---

[3]     Additionally, the Court notes that Dr. Blakely filed a Notice of Pendency against the Property. *See* Notice of Pendency, dated February 15, 2020 [Adversary Proceeding No. 20-01004, ECF No. 5]. Because the Notice of Pendency was filed subsequent to Amsterdam's Motion to Dismiss, Amsterdam has not had the opportunity to request affirmative relief with respect to the Notice of Pendency. But in the Court's rulings above, the Court concludes that the Notice of Pendency has no basis in law or fact, and the Court directs that it be removed or Dr. Blakely may be subject to further legal actions against her, including but not limited to sanctions.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court grants the Summary Judgment Motion and the Motion to Dismiss.  Amsterdam should settle an order on seven days' notice.  The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order shall also be served upon Dr. Blakely and Ms. Thomas.

Last but not least, the Court notes that all the issues addressed today have previously been ruled upon by the Court by virtue of confirmation of the Final Plan and subsequent litigation.  The Court's patience is not infinite, and Dr. Blakely risks being the subject of a sanctions motion to the extent that she seeks to repeatedly relitigate issues already decided in this case.

Dated: New York, New York
         June 8, 2020


                                        _/s/ **Sean H. Lane**_____
                                        UNITED STATES BANKRUPTCY JUDGE